In the United States Court of Appeals
For the Fourth Circuit

United States of America,
      Appellee

      v.                              Case no. 23-4192

Lakendra Whitehead,
      Appellant

Appellant's Appendix to Memorandum Opening Brief

Transcript of Initial Appearance …………………………………………………1

Indictment …………………………………………………………………... 26

Notice of Appeal…………………………………………………………....29

```
1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF VIRGINIA
2                      ROANOKE DIVISION

3    *****************************************************************
     UNITED STATES OF AMERICA,
4
              Plaintiff,        CASE NO.: 4:23-CR-00004
5                               March 16, 2023
                                Roanoke, Virginia
6                               Initial Appearance, Arraignment,
     -v-                        Bond Hearing
7
     LAKENDRA DENISE WHITEHEAD,       Before:
8                                HONORABLE ROBERT S. BALLOU
                                 UNITED STATES DISTRICT JUDGE
9         Defendant.            WESTERN DISTRICT OF VIRGINIA

10   *****************************************************************
     APPEARANCES:
11
     For the Plaintiff:
12
          MICHAEL COLEMAN ADAMS
13        United States Attorneys Office
          Western District of Virginia
14        310 First Street, SW, Suite 906
          Roanoke, VA 24008
15        540-278-1473
          coleman.adams@usdoj.gov
16
17   For the Defendant:

18        BENJAMIN MARK SCHIFFELBEIN
          Federal Public Defender
19        Western District of Virginia
          210 First Street SW, Ste 400
20        Roanoke, VA 24011
          540-777-0888
21        benjamin_schiffelbein@fd.org

22   _____

23             Kelly Brown - FTR Recorder
             Mary J. Butenschoen - Transcriber
24
     PROCEEDINGS TAKEN BY FTR; TRANSCRIBED USING COMPUTER-AIDED
25   TRANSCRIPTION
```

1    (Proceedings commenced 1:03 p.m.)

2              THE COURT:  All right.  Good afternoon, everybody.

3              COUNSEL:  Good afternoon, Your Honor.

4              THE COURT:  All right.  Let's call our case,

5    please.

6              THE CLERK:  *United States of America v. Lakendra*

7    *Denise Whitehead*, Case Number 4:23-CR-4.

8              THE COURT:  All right.  Let the record reflect the

9    government is present by its counsel and defendant present --

10   is likewise present along with counsel.

11             All right.  Ms. Whitehead, if I could get you to

12   stand up, I'd be much obliged.

13             Good afternoon, ma'am.  My name is Robert Ballou.

14   I'm one of the judges here in the Western District of Virginia.

15   We're here today in connection with an indictment that's been

16   returned by a federal grand jury.  The purpose of today's

17   proceedings is to make sure that you understand the nature of

18   the charges in that indictment.  I'll make sure you understand

19   your very important constitutional rights, and then I'll make

20   sure that you understand the penalties associated with a

21   finding of guilt.  And if you are prepared today, I'll ask you

22   to enter a plea.  Then we'll address anything else we need to

23   address.

24             Let me first begin by asking you to state your full

25   name for me, please.

```
1            THE DEFENDANT:  Lakendra Denise Whitehead.

2            THE COURT:  How old are you, ma'am?

3            THE DEFENDANT:  33.

4            THE COURT:  And how far did you go in school?

5            THE DEFENDANT:  Eleventh grade.

6            THE COURT:  All right.  Fair to say you read, write,

7    and understand English?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Very well.  Today do you feel clearheaded

10   and understand where you are and why you're here?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  All right.  Now, Ms. Whitehead, let me

13   begin by telling you that the Fifth Amendment of the

14   Constitution guarantees you the right to remain silent, and you

15   don't have any obligation at all to make any statements about

16   these charges or answer any questions put to you by the

17   government through its investigating officers, its agents, or

18   its attorneys.  You do not have to participate in the

19   government's investigation.  The fact of the matter is you

20   never have to take the stand and testify unless you choose to

21   do so.

22           The Sixth Amendment of the Constitution guarantees

23   you the right to be represented by an attorney who will assist

24   you in understanding the nature of the charges you face,

25   challenging the government's evidence, as well as confronting
```

1   and cross-examining the government's witnesses.  Likewise, an

2   attorney will assist you in preparing and presenting any

3   defenses that you have to these charges.

4         You can hire any lawyer that you see fit, but if you

5   cannot afford one the government will appoint one for you at

6   its expense.

7         Do you understand that?

8         THE DEFENDANT:  Yes, sir.

9         THE COURT:  Am I correct you want me to appoint a

10   lawyer for you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  I do have your financial

13   affidavit that was completed when you spoke with probation over

14   the phone.  You understand you have an obligation to provide

15   truthful information, and the failure to do so may be a

16   separate federal offense of providing false statements under

17   oath.

18         Do you understand that?  Is that a yes?

19         THE DEFENDANT:  Yes.

20         THE COURT:  I'm recording this, and so I can see you

21   shake your head --

22         THE DEFENDANT:  Oh, I'm sorry.

23         THE COURT:  -- but we need to just make sure we get a

24   recording of it.

25         And am I correct the information you provided is true

USA v. Lakendra Denise Whitehead - 3/16/2023          5

1    and correct to the best of your knowledge?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Okay, very well.  So based upon the

4    information that's set forth in the -- in the indictment, your

5    financial affidavit, I find you qualified.  I'll have counsel

6    appointed.  I'm going to appoint Mr. Schiffelbein in the

7    Federal Public Defender's Office to be your attorney, not only

8    today but for as long as this matter is pending.

9              Okay.  Let me explain the indictment to you.  Do you

10   have a copy of it?

11             MR. SCHIFFELBEIN:  We do, Your Honor.

12             THE COURT:  Okay, very well.  So it is a four-count

13   indictment that charges providing false statements to a federal

14   firearms dealer.  I'm going to have the government explain to

15   you in greater detail what that -- what that indictment is all

16   about, what the penalties are if you are found guilty, and then

17   we'll also have explained to you the different pleas you can

18   enter.  And if you are prepared today, I'll have you enter a

19   plea to those charges.

20             Have you had a chance to go over the indictment with

21   Mr. Schiffelbein and at least understand the nature of the

22   charges?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  All right.  Mr. Schiffelbein, have you

25   had an adequate opportunity to advise Ms. Whitehead and

1    satisfied she can enter, for today's purposes, a knowing and

2    voluntary plea?

3              MR. SCHIFFELBEIN:  I am, Your Honor.

4              THE COURT:  All right, very well.

5         So Ms. Whitehead, I'm going to ask you to carefully

6    turn your attention to Mr. Adams, who is going to explain to

7    you the nature of the charges, penalties, and also the

8    different pleas you can enter.  Mr. Adams?

9              MR. ADAMS:  Yes, Your Honor.

10        Ms. Whitehead, you've been charged in a four-count

11   indictment, each count alleging that you made a false statement

12   during the purchase of a firearm.  The elements of this offense

13   and the associated penalty, which is the same for all the

14   counts, is as follows:

15        The government must prove that, one, you knowingly

16   made a false oral or written statement to a federally licensed

17   firearms dealer, that the false statement was made in

18   connection with the acquisition of a firearm, and that the

19   statement was intended or likely to deceive such firearms

20   dealer with respect to a fact material to the lawfulness of the

21   sale of the firearm.

22        The penalty associated with each count is a maximum

23   punishment of ten years imprisonment, a fine of up to $250,000,

24   a period of supervised release of up to three years, and a

25   hundred dollar special assessment for each count.

1          Now, you can enter one of three pleas to this

2    indictment: not guilty, guilty, or no contest.

3          Should you plead not guilty, you have the following

4    rights:  The right to a speedy and public trial; the right to

5    require the government to prove its case beyond a reasonable

6    doubt; the right to a trial by a jury of 12 persons, or if the

7    government consents to waive trial by jury to be tried by the

8    judge alone; the right to assistance of counsel throughout

9    trial; the right to remain silent at trial; the right to

10   confront all witnesses who testify against you and to

11   cross-examine those witnesses; the right to use subpoenas to

12   bring witnesses to court to testify on your behalf; and the

13   right to appeal a guilty verdict.

14         Do you understand the rights you have if you plead

15   not guilty?

16         MR. SCHIFFELBEIN:  Ms. Whitehead understands.

17         MR. ADAMS:  Should you plead guilty you would waive

18   these rights and the right to a trial and you would be making a

19   public admission of guilt.  The Court could hear some of the

20   facts of your case in order to lay a factual basis for your

21   guilty plea, but the government would not be required to prove

22   its case beyond a reasonable doubt.

23         Do you understand this?

24         MR. SCHIFFELBEIN:  Ms. Whitehead understands her

25   rights.

USA v. Lakendra Denise Whitehead - 3/16/2023          8

1          MR. ADAMS:  You may also plead no contest.  The

2    government always objects to any plea of no contest.  This plea

3    is similar to a plea of guilty except that it cannot be used

4    against you in a federal civil proceeding.

5          Do you understand this?

6          MR. SCHIFFELBEIN:  Ms. Whitehead understands her

7    rights.

8          THE COURT:  All right.  So Ms. Whitehead, do you

9    understand the charges you face in these four counts of the

10   indictment?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you understand the penalties you face

13   if you're found guilty?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And do you understand the different pleas

16   you can enter, the rights you have, and the rights you may

17   waive as to each plea?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  All right.  Satisfactory to waive formal

20   reading?

21         MR. SCHIFFELBEIN:  Yes, Your Honor.

22         THE COURT:  And plead collectively as well?

23         MR. SCHIFFELBEIN:  Yes, Your Honor.  We'd ask the

24   Court enter a plea of not guilty.

25         THE COURT:  All right, very well.

1          So Ms. Whitehead, as to the charges of Counts One

2    through Four, what is your plea?  Not guilty, guilty, or no

3    contest?

4          THE DEFENDANT:  Not guilty.

5          THE COURT:  All right.  I'll note your plea for the

6    record.  We have not scheduled this case for trial yet.  The

7    case has been assigned to Judge Urbanski in this court, and

8    we'll work with his calendar, the calendar of your attorney and

9    the government, and get this matter scheduled as soon as we can

10   reasonably do so.

11         Mr. Adams, I do have the pretrial services report.  I

12   understand that Ms. Whitehead has voluntarily submitted herself

13   today.  Any objection to what's set forth in the pretrial

14   services report?

15         MR. ADAMS:  No.  We're not seeking detention in this

16   matter, Your Honor.

17         THE COURT:  All right, very well.

18         Mr. Schiffelbein, anything I need to know about

19   Ms. Whitehead before I set conditions?

20         MR. SCHIFFELBEIN:  We don't have any information to

21   offer aside from what's in the pretrial services report.  I

22   would object to a number of the proposed conditions.

23         THE COURT:  All right.  Go ahead and lay those out.

24         MR. SCHIFFELBEIN:  Certainly.  There's a proposed

25   restriction on travel, that she comply with restrictions on

1    travel outside the Western District of Virginia.  Nothing in

2    the record that indicates that she's a risk of flight.  We

3    would simply ask that the Court order that if she were to

4    travel outside the Western District of Virginia, notify her

5    pretrial services officer, and otherwise prohibit her from

6    traveling outside of the continental United States.

7            There's a prohibition on contact with witnesses.

8    Unless there's any significant concerns about witness tampering

9    or any obstruction of justice, I'd ask that that provision not

10   be ordered because there's no evidence that it is necessary in

11   this case.

12           There's a request that she report any contact that

13   she has with law enforcement to her pretrial services officer.

14   We would object to that.  We believe it's compelled speech and

15   does have Fifth Amendment implications, and, again, there's no

16   reason to believe that it's necessary in this particular case.

17           There's a condition -- a request that she submit to a

18   search of her person, residence, vehicle.  There's no reason to

19   suggest in this case that she poses a danger to anybody or to

20   the community or to pretrial services officers, so we would

21   object to that.

22           There is a request that she refrain from the use of

23   controlled substances.  In part, I believe this is based on the

24   interview with Ms. Whitehead.  Although our CJA plan indicates

25   that, as much as possible, counsel will be appointed prior to

1  the pretrial services interview, I wasn't able to be appointed

2  until after that.  And I believe that pretrial services asked

3  her if she had used controlled substances or not and she made

4  statements in response to that.

5       There's nothing in the facts of this case, nothing in

6  her history, that suggests she has any drug problem at all, and

7  the fact --

8       THE COURT:  Well, I think what's in the pretrial

9  services report is that she does have a history of alcohol

10  abuse, and that's what's caused her current kidney condition.

11       MR. SCHIFFELBEIN:  There is nothing outside of what's

12  in the pretrial services report that would suggest it.

13       THE COURT:  Okay.

14       MR. SCHIFFELBEIN:  What's in the pretrial services

15  report suggests that at one time she had a substance abuse

16  disorder and does no longer.

17       THE COURT:  Okay.  I may have misunderstood the way

18  in which --

19       MR. SCHIFFELBEIN:  No longer has a substance abuse

20  disorder.  Regardless, to the extent she even had a substance

21  abuse disorder, it is not causative to interact with the

22  criminal justice system.

23       To the extent that Ms. Whitehead uses what is a

24  lawful substance in the Commonwealth of Virginia that is

25  otherwise prohibited, that action does not cause any concern

1    for whether she will appear in court in this case or whether

2    she's a danger to the public or the community at large, or

3    frankly even to herself.  So we don't believe it's called for

4    under the Bail Reform Act.

5        Likewise, we don't agree that there's a reason for

6    the Court to order her not to drink.  She does not drink

7    because of her kidney condition, but there's no evidence that

8    that is a condition that's necessary for the Court to be

9    assured that she will not be a risk of flight or a danger to

10   the community.

11       There is a provision that she submit to substance

12   abuse counseling and treatment or testing.  Likewise, we're

13   asking for the Court not to impose that because there's no

14   reason to believe in this case that Ms. Whitehead needs to have

15   substance abuse testing or treatment in order to not be a risk

16   of flight or a danger to the community.

17       Likewise, with mental health evaluation and mental

18   health treatment, there's no reason in this case to believe

19   that her actions -- alleged actions -- almost five years ago,

20   right before the statute of limitations were to expire, have

21   any bearing on her mental health or that there is any need for

22   any mental health counseling or treatment such that if she

23   weren't to do that the Court might have a serious concern that

24   she is either a risk of nonappearance in court or a danger to

25   the community.

1     I don't believe there's any evidence to support that

2  those conditions are necessary under the Bail Reform Act, so

3  we'd object to the Court imposing them.

4     THE COURT:  All right.  Do you want to address any of

5  that, Mr. Adams?

6     MR. ADAMS:  Your Honor, with respect to the not

7  contacting any type of witnesses, we do have a concern with --

8  in regards to that matter, and so I have four names that I can

9  submit to defense counsel with respect to that.

10     We don't know whether she still has communication

11  with these individuals, but this investigation hasn't

12  necessarily concluded, and so --

13     THE COURT:  Typically I will say not have any

14  contact -- what's intended is not have any substantive contact

15  regarding the allegations in the indictment.

16     MR. ADAMS:  That's right.  That's -- and that's fine

17  with the government, Your Honor, but there would be a need for

18  it I think in this case, unless otherwise authorized or -- by

19  law enforcement or the Court.

20     THE COURT:  Okay.

21     MR. ADAMS:  The prohibition against traveling inside

22  or outside of the district, I mean, I do think that's

23  relatively standard.  And probation can say -- can give her

24  permission to travel anywhere, it's just that she needs to sort

25  of notify them of if she intends to travel outside the

1    district.  I don't necessarily think that's a significant

2    restriction on her ability to travel and one that the probation

3    office has generally been, probably, accommodating with.

4            In terms of the contact with law enforcement

5    personnel, that condition makes sense for anybody on pretrial

6    release.  If they have a reason to encounter law enforcement,

7    we should know about it while they have a pending criminal

8    indictment in court.  That makes sense.  It's not always

9    possible that law enforcement would report those type of

10   contacts back to probation, and, therefore, this also allows

11   the supervising officer to know if Ms. Whitehead would have

12   been in any type of -- any type of trouble or had any type of

13   interactions.

14           The search of a person, residence, vehicle, or

15   office, the Court can probably tailor that to meet with needs

16   of probation in this matter.

17           As far as alcohol, I'll submit that to the Court

18   because I don't believe that -- that's definitely against her

19   best interest given her condition, but she does admit to the

20   frequent use of marijuana.  I don't believe that she has a

21   card, is what I read in the pretrial services report.  So on

22   that there is a history of substance abuse that can merit

23   testing if the probation officer feels like it -- it's

24   necessary.  They're the ones who can probably best judge that

25   in their interactions with Ms. Whitehead.

USA v. Lakendra Denise Whitehead - 3/16/2023          15

1        As far as the mental health components, I'll submit

2   those to the Court's discretion.

3        I think I've covered everything that Mr. Schiffelbein

4   addressed.

5        THE COURT:  Okay.  All right.  So Ms. Whitehead, I'm

6   going to set conditions of release, and I'm going to try to

7   make sure that I went through -- go through each of the

8   conditions and I'll address those in due course.

9        So first of all, bond in federal court is designed to

10   do two things:  One is to assure your presence in court when

11   you're required to be there, that you're on time, in place, and

12   ready to go.  And secondly, to reasonably assure the safety of

13   the community and others, including yourself.

14        If you violate the terms that I set, you are subject

15   to being taken into custody; held by the marshal until this

16   matter is resolved.  Likewise, if you commit a federal, state,

17   or local crime while on pretrial release, you are subject to

18   being separately indicted by the -- by the government for

19   violating my order of release.

20        Do you understand these things?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  All right, very well.  So I'm going to

23   set an unsecured bond.  You don't have to post anything out the

24   door, but the financial penalty if you violate is a $5,000

25   unsecured bond.

1    You are to -- you live at the Stokes Street address

2    with your mother; is that right?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  All right.  Anyone else live there?

5            THE DEFENDANT:  My mother's boyfriend.

6            THE COURT:  Okay.  And any weapons in the house?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  Any animals?

9            THE DEFENDANT:  No, sir.

10           THE COURT:  Very well.  So you're to live at the

11   Stokes Street address with your mother and her boyfriend.

12           Inside the home you cannot have any firearms or other

13   dangerous instrumentalities, and you cannot possess a firearm

14   while on pretrial release.

15           With respect to travel, first of all, if you have any

16   passports you need to surrender those, and if you don't have a

17   passport you cannot apply for one.

18           With respect to travel, you cannot travel outside the

19   Western District of Virginia without the permission of your

20   probation officer, and that is typically given liberally to be

21   able to comply with conditions, especially if you need any

22   medical treatment.  I recognize you live down in the

23   Martinsville area.  Where do you get your medical treatment?

24           THE DEFENDANT:  I travel to -- to UVA.  I go to UVA

25   and Lynchburg --

1          THE COURT:  Okay.

2          THE DEFENDANT:  -- for my appointments.

3          THE COURT:  Both of those are in the western

4    district, and that's perfectly fine.

5          THE DEFENDANT:  Okay.

6          THE COURT:  If you need -- the western district is

7    just east of Charlottesville all the way to the far western tip

8    of Virginia.  If you need to travel across state lines, just

9    let your probation officer know and get their permission.

10          The reason I -- I have that condition is it is a

11    standard condition.  That's where this Court has jurisdiction,

12    and so your probation officer can give you permission to cross

13    state lines as need be, okay?

14          MR. SCHIFFELBEIN:  She's indicated she's on a

15    transplant list at the Duke hospital.  And I know that the

16    Court is --

17          THE COURT:  If -- first of all, probation is going to

18    give you permission to be able to get whatever medical

19    treatment you need to get outside of the state.

20          THE DEFENDANT:  Okay.

21          THE COURT:  If you need to go on an emergency

22    basis -- correct me if I am wrong -- you go and have your

23    family contact probation and let them know that you go.  Take

24    care of yourself first.

25          THE DEFENDANT:  Okay.

USA v. Lakendra Denise Whitehead - 3/16/2023        18

1        THE COURT:  All right.  But it's not an emergency to

2   go across state lines to dinner.

3        THE DEFENDANT:  Yes, sir.  Yes, sir.

4        THE COURT:  But it is an emergency to go to Duke to

5   get a transplant.

6        THE DEFENDANT:  Okay.

7        THE COURT:  All right.  And just, in other words,

8   stay in touch with probation, all right?

9        THE DEFENDANT:  Yes, sir.

10        THE COURT:  So that's the first thing.

11        With respect to contacts with witnesses, for the

12   persons who are identified by -- by the government, you're not

13   to have any contact regarding the subject matter of this, this

14   action, all right?

15        Generally -- and that's going to be my order, and

16   I'll leave it to your attorney for any further advice with

17   respect to whether you should have contacts with any known

18   witnesses in the case, but the government will provide the

19   names of those persons that are known witnesses in the case.

20        If you -- if you do have any contact with law

21   enforcement regardless of how minor it may be, they notify

22   probation that you've been in contact with them and the nature

23   of that contact, and so I require a person on supervision to

24   notify probation that they've been in contact with law

25   enforcement.  I do not believe that it violates your Fifth

1   Amendment rights to simply notify probation you've been in

2   contact with them in that regard.

3          With respect to your home, probation -- I do require

4   you and any adult to consent to a warrantless search for

5   purposes of compliance with pretrial release.  Probation -- the

6   standard by which probation conducts such search is where

7   there's reasonable cause that probation has the -- that there

8   is a violation and they don't -- they cannot search beyond

9   that.

10          Is that the language that's used, Mr. Murphy?

11          PROBATION:  Yes, sir.

12          THE COURT:  Reasonable cause, okay.

13          With respect to the use of any illegal or controlled

14   substances, there is a -- I recognize you don't drink now, and

15   but because of your history I'm going to -- and because of your

16   medical condition still require you not to drink.  And also the

17   condition is that you cannot have any illegal or controlled

18   substances.

19          In federal court, marijuana is an illegal substance,

20   and I can't authorize you to continue to use marijuana because

21   in federal court it is -- it is an illegal substance in that

22   regard.  So that is my condition.

23          I am not going to require -- I authorize probation to

24   be able to drug screen you at its discretion.  I'm not going to

25   require it on any particular basis, but it's at its discretion.

USA v. Lakendra Denise Whitehead - 3/16/2023     20

1         With respect to mental health, this issue was raised

2  in the -- are you presently seeing anyone for your depression

3  and bipolar?

4         THE DEFENDANT:  No, sir.  They just made me another

5  appointment in dialysis.

6         THE COURT:  Pardon me?

7         THE DEFENDANT:  No, they just set me up an

8  appointment for -- at dialysis to go talk to somebody.

9         THE COURT:  Okay.  So that is -- that is coming or --

10        THE DEFENDANT:  Yeah.

11        THE COURT:  Okay.  So I -- I do want you, because of

12  the recency of the diagnosis in that regard and because of the

13  information in pretrial services that -- that you had stopped

14  taking your medication, I do want you to be evaluated.  You can

15  continue to have the -- the appointment that they had at

16  dialysis, or probation can help you get set up with the local

17  community services board and to follow any treatment

18  recommendations that are recommended for you at that point in

19  time.

20        You got a lot going on, and this can be helpful to

21  you as you're able to be able to manage the issues that are --

22  that are ongoing.  And so that is a requirement that I'm going

23  to have as well, that you comply with that.

24        Otherwise -- Ms. Spence, did I cover everything?

25        PROBATION:  Yes, sir.

```
1              THE COURT:  Mr. Adams?

2              MR. ADAMS:  I do believe you did, Judge.

3              THE COURT:  Mr. Schiffelbein, did I cover every area

4    that you had an objection?

5              MR. SCHIFFELBEIN:  I believe so, Your Honor.  I just

6    have two points I'd like to raise.

7              THE COURT:  Yes, sir.

8              MR. SCHIFFELBEIN:  With respect to the mental health

9    treatment, is the Court requiring her to sign a release of

10   information?

11             THE COURT:  Sign a release solely as -- that she is

12   complying with mental health recommendations.  Not to get her

13   records to understand what she's doing, but that she's

14   complying with whatever recommendation there is and following

15   through in that regard.

16             MR. SCHIFFELBEIN:  Would the Court allow for me to

17   see the release before she signs it, essentially?  I don't want

18   her to have contact with probation and sign a release that I

19   don't otherwise agree with.

20             THE COURT:  And I'm going to get you to speak up.  I

21   think I heard everything.  You can certainly see the release,

22   yes.  Certainly.

23             But I think that's the scope of the contact that

24   you-all have with mental health, is to understand whether

25   there's compliance with treatment recommendations; is that
```

1    right, Mr. Murphy?

2         PROBATION:  Well, Your Honor, we would typically

3    contact mental health providers to determine when they -- when

4    they are seen, are they attending all appointments as

5    instructed, what the current diagnosis might be, treatment

6    protocol, and to give assessments by the provider.

7         THE COURT:  Okay.

8         PROBATION:  That's the only way we can really

9    coordinate supervision --

10        THE COURT:  Right.

11        PROBATION:  -- in conjunction with the provider.

12        THE COURT:  Okay, all right.  Very well.

13        MR. SCHIFFELBEIN:  We would object to that.  I

14   believe that's well beyond the scope of what is necessary under

15   the Bail Reform Act and also what the Court has ordered.

16        The second point I want to raise, and just because

17   I'm not sure of the law on this Court, Your Honor, setting

18   bail, and whether we can appeal this to the district court.  I

19   just want to note --

20        THE COURT:  So I will tell you what I understand, is

21   that any appeal is to the Fourth Circuit, so...

22        MR. SCHIFFELBEIN:  And that's why I'm trying to note

23   it to make sure the record is --

24        THE COURT:  Yes, sir.

25        MR. SCHIFFELBEIN:  -- as clear as possible.

1        We would object to the decision giving discretion to

2   probation about whether to require any drug testing.  Also

3   object to any other adult being required to submit to a test.

4   Not drug test, but just any -- I'm sorry, not test.  Any

5   search.

6        THE COURT:  Any search, all right.

7        What I want to make sure is that the home remains

8   free, especially of firearms, and so I want them to be able to

9   go into all areas of the home.  As I'm understanding, it's a

10  single family home.  It's not a home with separate rooms that

11  would be considered separate abodes, if you will.  And I want

12  probation to be able to make sure that it's a home that remains

13  safe in that regard.

14       With respect to the mental health assessment and

15  release, I note the objection.  If -- and I'll allow you to

16  return if you believe that what probation does goes beyond the

17  scope of the release, but I think as described by Mr. Murphy is

18  I think consistent with what my understanding of probation is

19  doing so as to be able to effect proper supervision and

20  reasonably ensure the safety of the community.

21       With respect to substance abuse testing, because

22  there is reference in the pretrial services report that

23  Ms. Whitehead has used marijuana as recently as two days before

24  the arrest, I'm going to give them the ability to be able to

25  test at their discretion.

```
 1          I'm not requiring it to be done at any particular

 2   time frame in that regard.  We understand that she's going to

 3   be positive for a time period.  We also understand that she's

 4   also going through a significant amount of -- of medical

 5   treatment.  And I presume that her medical providers -- this

 6   will be up to her -- are certainly aware of -- of any

 7   substances that she's taking, especially if she is hopeful to

 8   be on a transplant surgical table in the near future, they need

 9   to know what's going on.  So I note the objection in that

10   regard.

11          All right.  Any other objection?  Did I cover

12   everything else?

13          MR. SCHIFFELBEIN:  I believe so, Your Honor.  Thank

14   you.

15          THE COURT:  All right, very well.

16          Mr. Murphy?

17          PROBATION:  Your Honor, I just -- something mentioned

18   earlier.  Do you want me to go get one of these releases so the

19   defense can examine it?  After court is over?  Before court

20   adjourns?

21          THE COURT:  Yeah, I think after court is over.  I'm

22   not -- I'm going to be here all afternoon.

23          MR. SCHIFFELBEIN:  I -- I think she's going to sign

24   it.  I object to that --

25          THE COURT:  I understand.
```

1    MR. SCHIFFELBEIN:  -- and we'll litigate --

2    THE COURT:  Right.

3    MR. SCHIFFELBEIN:  -- further if we have to.

4    THE COURT:  Right.  And my ongoing concern is a

5  recency of a diagnosis and any indication of not taking

6  medication during this time period.  I want to make sure she

7  stays mentally well during this time period to the extent

8  possible.

9    All right.  Ms. Whitehead, don't go anywhere.

10  Ms. Brown is going to get the paperwork for you to be able to

11  sign.  And she's already been processed; is that right?

12    PROBATION:  Yes, sir.

13    THE COURT:  Thank you very much for coming up today

14  and being processed, and good luck to you.  Thank you.

15    THE DEFENDANT:  Thank you.

16    THE COURT:  All right.  We'll stand in recess.

17    THE MARSHAL:  All rise.

18  (Proceedings concluded 1:29 p.m.)

19                          **CERTIFICATE**

20

21      I, Mary J. Butenschoen, do hereby certify that the
   foregoing is a correct transcript of the electronic recording
   in the above-entitled matter.

22
                    _____/s/_____3/23/2023
23                  Mary J. Butenschoen, Transcriber

24

25

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

**FEB 2 3 2023**

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION
FEBRUARY 2023 SESSION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: 4:23cr00004 |
| | ) | |
| v. | ) | **SEALED INDICTMENT** |
| | ) | |
| LAKENDRA DENISE WHITEHEAD | ) | **In violation of:** |
| | ) | |
| | ) | 18 U.S.C. §§ 922(a)(6), 924(a)(2) |

## COUNT ONE

The Grand Jury charges that:

1. On or about March 17, 2018, in the Western District of Virginia, the defendant, LAKENDRA DENISE WHITEHEAD, in connection with the acquisition of a firearm, a SCCY, Model CPX 1, 9mm, Semi-Automatic Pistol, from Riverside Pawn, a licensed dealer of firearms, within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to Riverside Pawn, which statement was intended and likely to deceive Riverside Pawn, as to a fact material to the lawfulness of such sale of the said firearm to the defendant under chapter 44 of Title 18, United States Code, in that the defendant did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives form 4473, Firearms Transaction Record, to the effect that she was the actual buyer of the firearm indicated on the Form 4473, when in fact as the defendant then knew, she was not the actual buyer of the firearm.

2. All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT TWO

The Grand Jury further charges that:

1. On or about March 31, 2018, in the Western District of Virginia, the defendant, LAKENDRA DENISE WHITEHEAD, in connection with the acquisition of a firearm, a Taurus, Model PT111 G2, 9mm Semi-Automatic Pistol, from Big Shots Guns, a licensed dealer of firearms, within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to Big Shots Guns, which statement was intended and likely to deceive Big Shots Guns, as to a fact material to the lawfulness of such sale of the said firearm to the defendant under chapter 44 of Title 18, United States Code, in that the defendant did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives form 4473, Firearms Transaction Record, to the effect that she was the actual buyer of the firearm indicated on the Form 4473, when in fact as the defendant then knew, she was not the actual buyer of the firearm.

2. All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT THREE

The Grand Jury further charges that:

1. On or about May 10, 2018, in the Western District of Virginia, the defendant, LAKENDRA DENISE WHITEHEAD, in connection with the acquisition of a firearm, a Glock, Model 22, 40-Caliber Semi-Automatic Pistol, from Big Shots Guns, a licensed dealer of firearms, within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to Big Shots Guns, which statement was intended and likely to deceive Big Shots Guns, as to a fact material to the lawfulness of such sale of the said firearm to the defendant under chapter 44 of Title 18, United States Code, in that the defendant

2

did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives form 4473, Firearms Transaction Record, to the effect that she was the actual buyer of the firearm indicated on the Form 4473, when in fact as the defendant then knew, she was not the actual buyer of the firearm.

2.  All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT FOUR

The Grand Jury further charges that:

1.  On or about May 23, 2018, in the Western District of Virginia, the defendant, LAKENDRA DENISE WHITEHEAD, in connection with the acquisition of a firearm, a Glock, Model 22 Gen 4, 40-Caliber Semi-Automatic Pistol, from Deluxe Pawn II, LLC, a licensed dealer of firearms, within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to Deluxe Pawn II, LLC, which statement was intended and likely to deceive Deluxe Pawn II, LLC as to a fact material to the lawfulness of such sale of the said firearm to the defendant under chapter 44 of Title 18, United States Code, in that the defendant did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives form 4473, Firearms Transaction Record, to the effect that she was the actual buyer of the firearm indicated on the Form 4473, when in fact as the defendant then knew, she was not the actual buyer of the firearm.

2.  All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

A TRUE BILL this the __23__ day of February 2023.

*s/FOREPERSON*
FOREPERSON

_____
CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY

3

28

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

United States of America


     v.                                 Docket No. 4:23-CR-04


Lakendra Whitehead

                             Notice of Appeal

Ms. Lakendra Whitehead notifies this court of her appeal to the Fourth Circuit of the conditions of release imposed by the Honorable Robert S. Ballou on March 16, 2023, pursuant to 18 U.S.C. § 3145. She requests the court continue the appointment of her counsel on the appeal and waive the payment of fees and costs, given her indigency.

Respectfully submitted,

/s/ Benjamin Schiffelbein
Counsel for Ms. Whitehead
210 First Street SW, Ste 400
Roanoke, VA 24011
540 777 0880
Benjamin_Schiffelbein@fd.org